ROLAND L. BELSOME, Judge.
hln this criminal appeal, the defendant, Romero Rouser, challenges his convictions *864 and sentences for one count of manslaughter and two counts of attempted manslaughter. For the following reasons, we affirm.

PROCEDURAL HISTORY

The defendant was charged by grand jury indictment with one count of second degree murder (Count I), and two counts of attempted second degree murder (Counts II and III). He pled not guilty at arraignment. After a hearing, the trial court denied his motion to suppress the statement and identification. Following a jury trial, the defendant was found guilty of the responsive verdicts of manslaughter on Count I, and attempted manslaughter on Counts II and III. He was later sentenced to thirty years at hard labor on Count I and fifteen years at hard labor on Counts II and III, all sentences to be served concurrently. This appeal followed:

19FACTUAL BACKGROUND

On the afternoon of December 30, 2011, there was a fatal shooting as a result of an ongoing disagreement between Jumon Stubbs, the defendant’s brother, and Melvin James, Jr. (Melvin Jr.). Also among those present during the shooting were: David Lanoix, Troy James, Robert James, and Melvin James, Sr. (Melvin Sr.), Sindy James,[1] Traver James, Stephen Ray, Emile Blackburn, and Derek Ford.
Stubbs and Melvin Jr., who were friends, had a verbal disagreement and began physically fighting over tire rims.[2] Stubbs, who worked at a tire shop,- gave the rims to Melvin Jr. before receiving payment. He went to the One Stop Auto Repair shop, the James family’s business located in the 2600 block of North Miro Street, to collect either the money or the rims as year-end inventory at the tire shop was approaching. After the fight, Stubbs called 911, but later left the scene in his vehicle. He subsequently returned with the defendant and Derek Ford, calling 911 a second time to alert the police of his return. Another physical altercation ensued between Stubbs and Melvin Jr.
Once the second fight ended, Melvin Jr. crossed the street, where the defendant was standing near the open passenger’s door of his brother’s car. At that time, the defendant and Robert James began arguing. ■ When the defendant put his hands in Robert James’ face, Robert James punched the defendant and a third fight | (¡erupted.[3] At some point, the defendant entered the vehicle removed a gun and began shooting.[4] Just before the shooting, Stubbs was on the phone with 911 for the third time to alert the police that he “was into it” with someone over his rims and they threatened to go get a gun. The shooting occurred before the police arrived and can be heard on the 911 recording.
The defendant immediately fled the scene, but later turned himself in to the police.[5] Melvin Jr. sustained fatal gunshot *865 wounds. Troy James and David Lanoix, a customer at the repair shop, sustained non-fatal injuries.

ERRORS PATENT

A review of the record reveals that the transcript and minute entries are inconsistent. While docket master and minute entries from the December 17, 2013, sentencing hearing reflect that the trial court incorrectly imposed all three sentences without the benefit of probation or suspension of sentence, the sentencing transcript properly contains no such restrictions on the sentences.[6]
14When there is a conflict between a minute entry and a transcript, the transcript controls. State v. Fortenberry, 11-22, p. 5 (La.App. 4 Cir. 7/27/11), 73 So.3d 391, 394 (citing State v. Randall, 10-27, p. 3 (La.App. 4 Cir. 10/27/10), 51 So.3d 799, 802; State v. Lynch, 441 So.2d 732 (La.1983)). Therefore, we remand the case and instruct the trial court to amend the pertinent docket master and minute entry from sentencing to conform with the transcript. We further direct the Clerk of Court to transmit the corrected documents to the officer in charge of the institution to which defendant has been sentenced and to the Louisiana Department of Corrections Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam).

SUFFICIENCY ASSIGNMENT OF ERROR

The defendant asserts three principal assignments of error related to sufficiency and admissibility of evidence, and excessive sentence. In reference to his sufficiency claim, the defendant raises two issues: 1) the evidence was insufficient to negate the claim of self-defense; and 2) the trial court erred when giving the jury instructions.
When addressing sufficiency claims, this court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction, “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that |sall of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. *866 State v. Juluke, 98-841 (La.1/8/99), 725 So.2d 1291, 1293 (per curiam) (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted). A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Juluke, 725 So.2d at 1293. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational , trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Winston, 11-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).

Self-Defense/Justifíeation

The defendant does not dispute that the elements of manslaughter were proven beyond a reasonable doubt. Rather, he argues that the State failed to prove that he did not act in self-defense, i.e., that his actions were not lawfully justified.
| fiThis case involves a homicide victim and two non-homicide victims. La. R.S. 14:18 provides that “[t]he fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct.” La. R.S. 14:19 provides in part: “the use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person ... provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.” A homicide is justifiable when it is committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1).[7] Thus, in both homicide and non-homicide cases, the force used, whether deadly or non-deadly, must be necessary.
It is well-settled that in a homicide case where the defendant asserts that he acted in self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Byrd, 12-556, p. 3 (La.App. 4 Cir. 6/5/13), 119 So.3d 801, 804, writ denied, 13-1589 (La.1/27/14), 130 So.3d 957. However, it is unsettled whether the burden of proof as to a claim of self-defense in a non-homicide situation is: (1) upon the defendant to establish by a preponderance of the evidence that he acted in self-defense; or (2) upon the State to establish beyond a reasonable doubt that *867 the defendant did not act in self-defense. See State v. Fluker, 618 So.2d 459, 463 (La.App. 4th Cir.1993) (the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense); State v. Wischer, 04-325, pp. 8-9 (La.App. 4 Cir. 9/22/04), 885 So.2d 602, 606-09 (the defendant has the burden of proving the affirmative defense of justification, i.e., self-defense, by a preponderance of the evidence). Although we agree with this Court’s holding in Fluker, we find it unnecessary to resolve the issue. For the reasons that follow, we find that the record supports a finding by the jury that the State proved, beyond a reasonable doubt, that the defendant did not act in self-defense because the force he used was not necessary. Consequently, the defendant did not prove his self-defense claim by a preponderance of the evidence.
The evidence at trial revealed that the defendant fired ten shots. Melvin Jr. was struck by six bullets in the back, thigh, and abdomen area. Troy James was struck by two bullets in his right arm and hip. David Lanoix, an innocent bystander, was struck once in the groin.[8]
|RIt is undisputed that Robert James threw the first punch in the fight with the defendant. He testified that he approached the defendant and started hitting him, preventing the defendant from getting into the Camaro. It is unclear as to whether other bystanders joined in the fight, and as to whether a metal object was used to hit the defendant.[9] Regardless of the number of people involved in the fight or whether an object was used, the defendant was beaten until he was crouched down into a ball near the door of the vehicle, which would arguably place him in reasonable fear for his life and justify the use of force. Robert James’ wrists were swollen from the fight, so much so that he received medical treatment at the hospital. The defendant also had bruises and scrapes to his eye and back and a contusion on his head; however, he refused medical treatment.
The jury heard conflicting testimony regarding when the defendant began shooting. Lanoix, Sindy James, Troy James, and Melvin Sr. all testified that Melvin Sr. had already broken up the fight when the defendant began firing. Lanoix and Sindy James indicated that Melvin Jr. fell to the ground after being hit, at which time the defendant stood over him and continued firing, while Melvin Sr. indicated that the defendant “walked over” and continued *868 shooting. In contrast, RStubbs, Derek Ford, and the defendant testified that between two and six people were still fighting with the defendant when he began shooting.
Dr. Samantha Huber, the assistant coroner who performed the autopsy, testified that bullet number three entered the back of the decedent’s left thigh and exited the upper front of the left thigh, with a little “shoring” about the exit wound, which meant that part of the wound was up against something hard. She confirmed that 'the wound caused by bullet number three would be consistent with someone being shot while face down on the ground. She saw no evidence indicating that someone stood directly over the decedent and shot him. However, she confirmed that someone could have been more than two feet from the decedent, firing at a downward angle. Dr. Huber also concluded that bullet number one was technically fired from behind the decedent but more from the right, while bullets three and four were fired from behind.
Here, the jury clearly rejected the defense witnesses, and credited the State’s witnesses who indicated the fight had completely disbanded when the defendant began shooting. The factual determination that the fight was over is consistent with the physical evidence from the autopsy, which revealed that Melvin Jr. was shot from behind. Moreover, the assistant coroner’s conclusion that someone could have been more than two feet from the decedent firing at a downward angle is consistent with Melvin Sr.’s testimony that the defendant “walked over to” the victim and continued shooting him while he was on the ground. Thus, it was reasonable for the jury to conclude that the use of deadly, or non-deadly, force jinupon the victims was not necessary since the threat had ceased. Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to negate the self-defense claim and support the jury’s finding that the defendant was guilty of one count of manslaughter and two counts of attempted manslaughter.

Jury Instructions

In reference to the alleged jury instruction errors, the defendant raises two issues concerning the applicability of the justification defenses and the duty to retreat. First, he argues that the trial court erred in instructing the jury as to the defenses of justification under La. R.S. 14:19 and justifiable homicide under La. R.S. 14:20, instead of instructing it solely on justifiable homicide.[10] This issue was discussed when we addressed the sufficiency issue. See n.6. For the reasons previously discussed, we find that La. R.S. 14:19 was applicable to the charges involving victims Troy James and David Lanoix. However, although the trial court ruled that it was going to instruct the jury as to the self-defense/justification provision of La. R.S. 14:19(A), applicable to the non-deadly use of force, a reading of the jury instructions actually given by the trial court establishes that the jury only received an instruction on justifiable homicide. The trial court failed to give an instruction on the justifiable use of force or violence as to the two counts of |n attempted murder under La. R.S. 14:19.[11] Therefore, the defendant is incorrect in his assertion.
*869 Next, the defendant argues that the trial court improperly instructed the jury on the issue of retreat. In particular, he claims that the trial court’s instructions were contrary to the provisions set forth in La. R.S. 14:19(C-D) and La. R.S. 14:20(0-D).[12]
The trial court first stated that the possibility of retreat may be considered as a factor when determining whether killing was necessary, but went on to say that retreat may not be considered as a factor to determine whether deadly force was reasonable and necessary.
The transcript reflects the following instructions pertinent to this issue:
112Some factors you should consider in determining whether the defendant had reasonable belief that the killing was necessary are: The possibility of avoiding the necessity of taking human life by retreat [emphasis supplied]. However, a person who is not engaged in any unlawful activity and is in a place where he or she has a right to be, has no duty to retreat before using deadly force to save himself from danger of losing his life or receiving great bodily harm. He may stand his ground and meet the opponent force with force.
The possibility of retreat shall not be considered as a factor in determining whether or not the use of deadly force was reasonable and apparently necessary to prevent the commission of the violent or forcible felony [emphasis added].
Though the transcript reflects that the trial court instructed the jury on the issue of retreat on the homicide charge, pursuant to La. R.S. 14:20(C-D), it also reveals that the instruction was contradictory. However, considering that there is no objection in the record to the instructions on retreat, we find that the issue was not preserved for review. An alleged error in the jury instruction is not preserved for appeal in the absence of a contemporaneous objection. La.C.Cr.P. art. 841; State v. Haarala, 898 So.2d 1093, 1098 (La.1981).

EVIDENTIARY ASSIGNMENT OF ERROR

In his second assignment of error, the defendant argues that the trial court erred in making various evidentiary rulings on State objections, preventing him from presenting testimonial evidence, at least some of which was allegedly non-hearsay, or otherwise admissible as to his state of mind, his present sense impression, or as part of the res gestae. He also argues that the trial court’s rulings deprived him of his Sixth Amendment right *870 to present a defense, an issue which is not' necessarily dependent upon the correctness of the trial court’s evidentiary rulings. The defendant lists eight sub-assignments of error regarding these rulings. | iSHowever, he does not include page references in six of the eight sub-assignments,[13] nor does the record reflect any proffer of excluded evidence.[14] In addition, these alleged errors are vague, and do not include adequate argument in support of the issues.[15] Due to the fact these six alleged errors are not properly briefed and/or proffered, we will not consider them. However, two of the alleged errors are adequately briefed and are reviewable on appeal.

Testimony of the Custodian of Records

First, the defendant argues that the trial court erred in excluding testimony of the custodian of records. In particular, he argues that the 911 call logs were admitted under the business records exception to the hearsay rule; however, the custodian was not allowed to explain pertinent terms referenced in the logs, which he alleges were otherwise nonsensical to lay persons.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense.[16] State v. Dressner, 081366, p. 15 (La.7/6/10), 45 So.3d 127, 137-38. Due process affords a defendant 114the right of full confrontation and cross-examination of the State’s witnesses. State v. Joyner, 11-1397, p. 36 (La.App. 4 Cir. 10/24/12), 107 So.3d 675, 695-96. “It is difficult to imagine rights more inextricably linked to our concept of a fair trial.” State v. Marcelin, 12-0645, p. 10 (La.App. 4 Cir. 5/22/13), 116 So.3d 928, 934 (quoting State v. Thomas, 11-1219, p. 14 (La.App. 4 Cir. 12/6/12), 106 So.3d 665, 675). A trial court’s ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion. State v. Cyrus, 11-1175, p. 20 (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565. In addition, confrontation errors are subject to the harmless error analysis. State v. Henderson, 13-0526, p. 12 (La.App. 4 Cir. 2/19/14), 136 So.3d 223, 230-31.
Though elusive, the defendant appears to argue that his defense was imped *871 ed when the trial court prevented New Orleans Police Department 911 operator, Ms. Ashley Badon, from explaining terms from the 911 call log to the jurors. Ms. Badon was called as a routine witness by the State to authenticate the recording of the 911 call made by Jumon Stubbs and the written incident recall log relative to that- call, showing the pertinent time and the dispatcher activity. The jury heard the 911 recording multiple times, as defense counsel replayed it during his questioning of Ms. Badon. The caller, who clearly gave his name as Jumon Stubbs, reported to the operator that he was “into it” with someone at the repair shop because he came to get his rims, and “they threatened to go get a gun.” The operator asked if it was the owner and Stubbs responded that it was one of the owner’s sons.
The corresponding entries on the incident log state: 1) “OWNERS [sic] SON ... B/M ... WEARING ALL BLACK.... IRATE AT LOC ... TRYING TO START 103F AND 2) “AT LOC ... SUBJ THREATENED TO GO GET 95G AT |1SLQC.” The defendant’s argument follows that a lay person might not know that a “103F” is a reference to a fight and a “95G” is a reference to a gun by reference to the shorthand for La. R.S. 14:95, the statute proscribing the illegal carrying of weapons. However, contrary to the defendant’s assertion, Ms. Badon explained what both of these terms meant during cross-examination. The State only objected the second time defense counsel questioned Ms. Badon on the meaning of the term “95 G.” Though the trial court sustained the objection as asked and answered, Ms. Badon had already explained the meaning of the term, thus any alleged error was harmless. Accordingly, we find that the defendant had a meaningful opportunity to confront the witness and present his defense.

Testimony of Detective Elizabeth Garcia

Next, the defendant argues that the trial court erroneously excluded evidence regarding what Detective Elizabeth Garcia learned about “someone going to get a gun and who that person allegedly was.” To the extent that the record does not contain any apparent objections to the exclusion of this evidence, the error has not been preserved for review. An appellate court will only review issues that were submitted to the trial court. Rule 1-3, Uniform Rules, Courts of Appeal. See also La.C.Cr. P. art. 841. As a corollary to the contemporaneous objection rule, the error must have been pointed out to the trial judge, and a defendant is limited on appeal to grounds for the objection articulated at trial. State v. Jackson, 450 So.2d 621, 634 (La.1984).
Defense counsel did object when the trial court barred defense counsel from playing the 911 recording during the detective’s cross-examination. Defense counsel attempted to have the recording replayed when Detective Garcia could not confirm whether the 911 caller identified himself as Jumon Stubbs. In sustaining Imthe objection, the trial court stated that playing the recording for Detective Garcia was improper because she did not make the recording.
On appeal, the defendant makes no specific argument as to this alleged error by the trial court. He does generally cite State v. Moses, 05-787 (La.App. 5 Cir. 5/9/06), 932 So.2d 701, for the proposition that a police officer’s testimony may include information provided by another individual without constituting hearsay if it is offered to explain the officer’s decisions or actions. This well-recognized rule contemplates that the information is necessary to explain the officer’s actions. However, it does not apply here because the evidence was not being offered to explain *872 Detective Garcia’s actions or conduct in the investigation. Moreover, Detective Garcia testified that she was aware, through the 911 call and a subsequent interview, that someone was going to get a gun; however, the identity of the person was never disclosed. Therefore, the evidence the defendant was seemingly attempting to elicit was properly introduced through the testimony of Detective Garcia, making any perceived error in the failure to play the 911 recording harmless. As such, there was no violation of defendant’s right to present a defense. For these reasons, we cannot say that the trial court abused its discretion as to these evidentia-ry rulings.

SENTENCING ASSIGNMENT OF ERROR

In his final assignment of error, the defendant argues that his sentence was constitutionally excessive.[17] In particular, he argues that the trial court did not 1^adequately consider the sentencing guidelines, thus all of his sentences were in the upper ranges when they should have been in the lower ranges.
La. Const, art. I, § 20 explicitly prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Every, 09-721, p. 7 (La. App. 4 Cir. 3/24/10), 35 So.3d 410, 417. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. State v. Cassimere, 09-1075, p. 5 (La.App. 4 Cir. 3/17/10), 34 So.3d 954, 958. “A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.” State v. Ambeau, 08-1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221. “A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.” State v. Vargas-Alcerreca, 12-1070, p. 25 (La.App. 4 Cir. 10/2/13), 126 So.3d 569, 583 (quoting State v. Galindo, 06-1090, pp. 15-16 (La. App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113).
A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). “On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.” State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 2002-737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
|1sWhen reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Wiltz, 08-1441, p. 10 (La. App. 4 Cir. 12/16/09), 28 So.3d 554, 561. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must *873 determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. State v. Bell, 09-588, p. 4 (La.App. 4 Cir. 10/14/09), 28 So.3d 981, 984.
The thirty-seven-year-old defendant, with no previous convictions, was convicted of one count of manslaughter and two counts of attempted manslaughter. He was sentenced within the statutory guidelines to thirty years for the manslaughter conviction and fifteen years for each of the convictions for attempted manslaughter, with the sentences to run concurrently.[18]
The record reveals that the trial court adequately considered the sentencing guidelines, and articulated a factual basis for the sentence. During the sentencing hearing, the trial court submitted three letters into the record on behalf of the defendant, as well as a letter from the decedent’s wife, Sindy James, who was at the scene of the shootings and comforted her mortally wounded husband as he lay on the ground, shot six times by the defendant. Mrs. James had testified at trial that she lost her husband, her best friend, and her children’s father; that she had hsbeen- unable to return to work so she lost her job; that she could not pay her bills and lost her truck and her car; that it had been a rough road for her and her daughters; that her youngest daughter had to get counseling; and that her oldest daughter had nightmares because she saw her father lying on the ground shot. The State noted that David Lanoix, the innocent bystander, was unable to come to court but wished to relay to the court that he suffers constant pain every day from the bullet still lodged in his leg.
Before sentencing the defendant, the trial court recognized that the defendant and the decedent were law-abiding citizens. The trial court noted that it considered all the facts of the case, significantly that the decedent suffered numerous gunshot wounds, with more than one coming from behind. After observing that the convictions were crimes of violence, the trial court sentenced the defendant.
The record before us does not support the conclusion that the sentences imposed on defendant make no measurable contribution to acceptable goals of punishment, are nothing more than the purposeless imposition of pain and suffering, or are grossly out of proportion to the severity of the crime. Nor, when the crime and punishment are considered in light of the harm done to society, does it shock the sense of justice.
Additionally, a comparison of this case with other cases addressing the excessiveness of a sentence imposed for manslaughter supports the thirty-year sentence imposed. In State v. McGhee, 10-583 (La. App. 3 Cir. 12/8/10), 52 So.3d 318, the defendant was convicted of manslaughter and sentenced to forty years at hard labor. During an altercation at a bar, the defendant shot and killed a bystander. The defendant was twenty-six years old at the time of the offense and 12phad prior convictions for possession of cocaine and domestic abuse battery. The appellate court upheld the defendant’s forty-year sentence.
In State v. Lewis, 09-1404 (La.10/22/10), 48 So.3d 1073, a sixteen-year-old male *874 watched a fight between friends, Bush and Crain, as a bystander. During the fight, he picked up a gun that had fallen out of Bush's pocket and fired a single shot into Crain’s temple. The sixteen-year-old was convicted of manslaughter and sentenced to thirty years at hard labor. The Louisiana Supreme Court affirmed defendant’s sentence.
In State v. Osborn, 13-697 (La.App. 3 Cir. 12/11/13), 127 So.3d 1087, the defendant, who was charged with second degree murder, went to a nearby vehicle to retrieve a gun and fired it to break up a fight, resulting in the death of the victim, who was also trying to break up the fight. He was convicted of manslaughter and sentenced to thirty years at hard labor. The appellate court upheld the defendant’s thirty-year sentence.
Likewise, there are cases which support the fifteen-year sentences for the attempted manslaughter convictions. In State v. Maze, 09-1298 (La.App. 3 Cir. 5/5/10), 36 So.3d 1072, the court held that a twenty-year sentence for attempted manslaughter was not constitutionally excessive. See also State v. Willis, 36,198 (La.App. 2 Cir. 8/14/02), 823 So.2d 1072 (fifteen-year sentence for attempted manslaughter not excessive); State v. Dubroc, 99-730 (La.App. 3 Cir. 12/15/99), 755 So.2d 297 (twelve-year sentence for attempted manslaughter and three-year sentence for aggravated battery, to be served consecutively, not excessive even though imposed on forty-five-year-old first offender who was married, a father and grandfather, and had always been gainfully employed).
121 “Although a comparison of sentences imposed for similar crimes may provide some guidance, sentences must be individualized to the particular offender and to the particular offense committed.” State v. Boudreaux, 11-1345, p. 15 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 891. However, here, the record substantiates that the sentences were meaningfully tailored to the offender and the offense. Given the particular circumstances of this case, we do not find that the sentences were excessive or that the trial court abused its wide discretion when sentencing the defendant.
For these reasons, the defendant’s convictions and sentences are affirmed. As already discussed, the case is remanded for correction of the sentencing in the docket master and minute entry.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF SENTENCING.

. Troy and Robert James are Melvin's brothers. Melvin Sr. is their father. Sindy James was the wife of Melvin Jr.

. Though Mr. Stubbs denied that the first argument with Melvin Jr. turned physical,both Troy and Robert James testified that the two were fighting before Stubbs left in his car.

. There was conflicting testimony as to whether Troy James and others were involved in the fight against the defendant.

. The testimony regarding the time of the shooting is inconsistent: several witnesses indicated the fight with the defendant had ended and others indicated that the defendant was still involved in the altercation at the time of the shooting.

. Testimonial evidence and physical evidence suggest that the defendant and his companions were shot at as they fled the scene. Photographs of the Stubbs’ vehicle were entered into evidence. Detective Elizabeth Gar *865 cia of the New Orleans Police Department identified photos of two "strike marks” on the vehicle that were possibly made by bullets and also a hole in the rear window glass. Detective Garcia later confirmed on cross-examination that the rear window glass had been shattered by a bullet, but was still intact. She was unable to locate any spent projectiles associated with the two strike marks. However, Jumon Stubbs’ subsequently contacted her and turned over a spent copper pellet and a jacket fragment, allegedly obtained from the vehicle. At trial, members of the James family denied that anyone shot at Stubbs’ vehicle.

. La. R.S. 14:31(B) states:
Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

. The defendant argues that the defense of justification under La. R.S. 14:19 is inapplicable because his “single, continuous act of firing wildly to stop the beating he was receiving" resulted in the death of the decedent and the wounding of the two other victims. Thus, he contends his self-defense claims for attempted manslaughter convictions in the shootings of Troy James and David Lanoix should be judged in accordance with the justifiable homicide criteria of La. R.S. 14:20. He cites no jurisprudential authority for this proposition. The language in La. R.S. 14:19(A) is clear and specifically excludes its application in cases "where the force or violence results in a homicide.” Conversely, La. R.S. 14:20 unambiguously provides for a self-defense claim in a homicide situation. The law must be applied as written. State v. Dick, 06-2223, p. 6 (La. 1/26/07), 951 So.2d 124, 137 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written.”) Since the force or violence used against James and Lanoix did not result in a homicide, the justification provision of La. R.S. 14:19(A) applies to the charges involving these victims. Nevertheless, this distinction is inconsequential as both defenses contain the same necessary force requirement.

. Though Lanoix was not involved in the altercation, under the doctrine of "transferred intent,” "when a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the intended victim actually intended to be shot, then it would be unlawful against the person actually shot, even though that person was not the intended victim.” State v. Ross, 12-109, p. 8 (La.App. 4 Cir. 4/17/13), 115 So.3d 616, 621, writ denied, 13-1079 (La. 11/22/13), 126 So.3d 476.

. Robert James, Troy James, Sindy James, and Lanoix testified that Robert was the only one involved in the fight with the defendant. However, Stubbs, Ford, and the defendant testified that Troy James, Melvin Jr., and at least two others were involved in the fight. Though the other witnesses denied seeing a metal object being used during the fight, the deféndant testified that he was being hit with one. Nevertheless, Louisiana criminal statutory law recognizes that "serious bodily injury" can be inflicted without the use of a dangerous weapon, e.g., with the fists of the offender. See La. R.S. 14:34.1 (proscribing the offense of second degree battery). Thus, the fact that there was no conclusive evidence that a weapon, such as a wrench or other blunt object, was being used to batter defendant does not de facto defeat a claim of self-defense, either under La. R.S. 14:19 or La. R.S. 14:20.

. Prior to the court instructing the jury, defense counsel objected to the instruction under La. R.S. 14:19, asking for one justification instruction under La. R.S. 14:20.

. Notably, the defendant has not raised any issue concerning the trial court’s failure to give a self-defense/justification instruction, pursuant to La. R.S. 14:19, as to the two attempted murder charges. Nor was a specific objection raised in the trial court below. See La.C.Cr.P. art. 841, discussed infra.

. These provisions are identical in effect as to the issue of retreat.
La. R.S. 14:19(C-D) states:
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using force or violence as provided for in this Section and may stand his or her ground and meet force with force.
D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry. La. R.S. 14:20(C-D) states:
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

. According to Uniform Rules, Courts of Appeal Rule 2-12.4, an argument on an assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. This Court may disregard an argument on that error in the event suitable reference to the record is not made. An appellate court will only review issues that were submitted to the trial court. Rule 1-3, Uniform Rules, Courts of Appeal. See also La.C.Cr. P. art. 841.

. In order to preserve for review an alleged error in a ruling excluding evidence, counsel must make known to the court the substance of the excluded testimony. La. C.E. art. 103(A)(2). "This can be effected by proffer, either in the form of a complete record of the excluded testimony or a statement describing what the party expects to establish by the excluded evidence.” State v. Magee, 11-574, p. 61 (La.9/28/12), 103 So.3d 285, 326, cert. denied, — U.S. -, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013).

. See Uniform Rules, Courts of Appeal, Rule 2-12.4; State v. Batiste, 561 So.2d 999, 1000 (La.App. 4th Cir. 1990) (assignments of error that are not briefed are considered abandoned).

. The Sixth Amendment to the U.S. Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.” La. Const, art. 1, § 16 provides, in pertinent part, that “[a]n accused is entitled to confront and cross-examine the witnesses against him” and “to present a defense.”

. The defendant also raises the claim that counsel was ineffective for failing to file a motion to reconsider the sentence, which was necessary to preserve the sentencing issue for appellate review. See La.C.Cr.P. art. 881.1(E). However, after sentencing, counsel noted an oral objection to the sentence while making his motion for appeal; therefore, the issue was preserved for appellate review. See State v. Veal, 12-712, p. 23 (La.App. 4 Cir. 5/1/13), 116 So.3d 779, 793, writs denied, 13-1237, 13-1266 (La.12/2/13), 126 So.3d 498 (counsel’s objection after the sentence preserved the issue for appeal).

. In cases where the victim killed is ten years of age or older, the punishment for manslaughter is imprisonment at hard labor "for not more than forty years.” La. R.S. 14:31(B). The punishment for attempted manslaughter is imprisonment at hard labor for not more than twenty years. See La. R.S. 14:27(D)(3)(imprisonment shall not exceed "one-half of the longest term of imprisonment prescribed for the offense so attempted.”).