| | | |
|---|---|---|
| **DE ROME A. SEALS** | * | **NO. 2022-CA-0694** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **JOSEPH CORONA/DBA NOLA** | * | |
| **AUTOMOTIVE REPAIRS** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-07511, DIVISION "B-5"
Honorable Richard G. Perque, Judge Pro Tempore
**\* \* \* \* \* \***
**Judge Dale N. Atkins**
**\* \* \* \* \* \***

(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase,
Judge Dale N. Atkins)

**JENKINS, J. CONCURS IN THE RESULT**


De Rome A. Seals
1828 Charbonnet Street
New Orleans, LA 70117


      PLAINTIFF/APPELLANT


                         **AFFIRMED**
                         **MARCH 29, 2023**

DNA

TGC

*Pro se* plaintiff, De Rome A. Seals ("Mr. Seals"), seeks review of the September 16, 2022 trial court judgment dismissing his negligence claim against defendant, Joseph Corona d/b/a NOLA Automotive Repairs ("NOLA Automotive Repairs") following a bench trial in this matter. For the reasons that follow, we affirm.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

***MR. SEALS' SEPTEMBER 8, 2020 PETITION FOR DAMAGES***

On September 8, 2020, Mr. Seals filed a Petition for Damages ("Petition") naming NOLA Automotive Repairs as defendant. Therein, Mr. Seals alleged that in late April 2020, he took his 2005 Lincoln Navigator ("vehicle") to NOLA Automotive Repairs for replacement of eight spark plugs, including at least one broken spark plug.[1] Further, Mr. Seals contended that he brought his own spark plugs to be installed in the vehicle, and that he had a conversation at NOLA Automotive Repairs about the propensity for spark plugs to break in that particular

---

[1] The record is inconsistent regarding how many spark plugs Mr. Seals sought to replace. His Better Business Bureau complaint, which is discussed more fully throughout this Opinion, stated that he sought repair of five spark plugs, "including a broken one." The Petition referenced eight spark plugs, including one that "was broken inside the housing."

1

vehicle. Mr. Seals also stated in his Petition that he asked to be notified if NOLA Automotive Repairs discovered more than one broken spark plug in his vehicle. Additionally, Mr. Seals asserted that when he picked up his vehicle on May 1, 2020, there was an additional $109.00 charge for another broken spark plug replacement that he did not authorize, as well as a charge for "shop supplies." According to Mr. Seals' Petition, he had a conversation with NOLA Automotive Repairs the next day, May 2, 2020, to dispute the charges, and subsequently filed a complaint with the Better Business Bureau ("BBB") on June 8, 2020, which NOLA Automotive Repairs responded to, by letter, on June 16, 2020.

Mr. Seals' Petition further alleged that on August 8, 2020, he hired a mechanic, Mike Cutrer ("Mr. Cutrer") to "diagnose" the vehicle at a second automobile repair shop, NOLA Auto Sports. Mr. Seals alleged that during Mr. Cutrer's examination, the on-board diagnostic scanner indicated that an unidentified spark plug "was misfiring" and that Mr. Cutrer "removed said spark plug[,]" which "was rusty and deeply covered with soot . . . ." Mr. Seals' Petition did not reference which spark plug was broken in the vehicle when he brought it for repairs at NOLA Automotive Repairs or which spark plug Mr. Cutrer removed during his inspection of the vehicle at NOLA Auto Sports. That is, the Petition does not explain if the spark plug that Mr. Seals sought replacement of at NOLA Automotive Repairs in late April 2020 is the same spark plug that Mr. Cutrer removed from the vehicle on August 8, 2020, at NOLA Auto Sports.

In his Petition, Mr. Seals claimed that he suffered a loss of $687.00;[2] undue stress; loss of sleep; and $3,200.00 in lost wages. He sought damages in the

_____

[2] The BBB complaint showed a purchase of $616.70 at NOLA Automotive Repairs. Mr. Seals' Petition listed an uncategorized "[l]oss of $617.00, +$70." The record is unclear as to what the additional $70 loss in the Petition refers.

amount of $3,817.00 "plus court cost[s]," as well as "any and all equitable/punitive relief deemed by the court."

Mr. Seals attached NOLA Automotive Repairs' June 8, 2020 response to his BBB complaint to his Petition. In this response, Yvette Koehn, who identified herself as an administrator for NOLA Automotive Repairs, stated that NOLA Automotive Repairs quoted the full repair price beforehand, and "kept [Mr. Seals] informed through the whole process of replacing [his] spark plugs . . . ." The letter from NOLA Automotive Repairs also stated that "shop supplies are for items that [NOLA Automotive Repairs] use[s] while working on a vehicle," and that the fee "is legal according to [La.] R.S. 32:1263.[3]"

Additionally, Mr. Seals attached to his Petition a June 16, 2020 letter from the law firm of Provosty, Sadler, & deLaunay, APC ("law firm"). The law firm addressed the letter to NOLA Automotive Repairs and explained that Mr. Seals "ha[d] contacted [the] law firm in connection with the unauthorized replacement of one spark plug on his [vehicle] . . . ." Further, the letter provided that "[a]lthough

---

[3] Louisiana Revised Statutes 32:1263 is titled "[m]otor vehicle repairs," and it provides:

> A. Suppliers of mechanical repairs and services for any vehicle subject to regulation pursuant to this Chapter shall provide each consumer with an itemized bill indicating repairs and services performed, parts replaced, materials used, the total labor charge, and the identity of the mechanic, repairman, or supplier who performed the work. Nothing in this Section shall prohibit a supplier of mechanical repairs and services from charging a service fee for the use of shop supplies such as rags, fender covers, small amounts of fluid, or other items which are not itemized, provided that the fee does not exceed ten percent of the total invoice for mechanical repairs or fifty dollars, whichever is less.

> B. The provisions of this Section shall not apply to suppliers of mechanical repairs and services for any recreational vehicle subject to regulation of this Chapter.

Mr. Seals indicates that he authorized the replacement of one spark plug, he disputes the $109.95 charge for the replacement of the additional [spark] plug, plus the $26.39 charge for 'shop supplies.'" The letter stated that "Mr. Seals maintains that these were not authorized charges and amicably requests that they be refunded within ten (10) days of the posting of this letter."[4]

### *NOLA AUTOMOTIVE REPAIRS' OCTOBER 5, 2020 ANSWER*

NOLA Automotive Repairs filed an Answer on October 5, 2020, wherein it denied all the allegations in Mr. Seals' Petition and contended that the trial court should dismiss his Petition. Thereafter, the trial court held a bench trial on August 31, 2022.

### *AUGUST 31, 2022 TRIAL*

Present at the August 31, 2022 trial were Mr. Seals and Jessie Wright ("Mr. Wright") for Mr. Seals; Patrick Giraud ("defense counsel"), counsel for NOLA Automotive Repairs; and Joseph Corona ("Mr. Corona"), the owner of NOLA Automotive Repairs.

---

[4] We note that Mr. Seals' Petition alleged that NOLA Automotive charged him $109.00; but the June 16, 2020 letter from the law firm claimed that NOLA Automotive Repairs charged him $109.95.

***Testimony of Jessie Wright***

Mr. Seals called as a witness Mr. Wright, who identified himself as a truck driver. Mr. Wright answered in the negative when asked whether he had any vocational training in mechanical work or any expertise in mechanics that he could provide to the trial court; but he explained that he previously worked at a tire shop where he changed tires. After Mr. Seals stated that he was not offering Mr. Wright as an expert witness,[5] Mr. Seals explained that "[Mr. Wright's] testimony [was] based on his personal knowledge . . . ." Thereafter, Mr. Wright attested that "[his] personal knowledge" was that NOLA Automotive Repairs "put the old parts in" the vehicle and "[did not] change the [spark] plugs." In this regard, Mr. Wright testified that he accompanied Mr. Seals to NOLA Auto Sports where Mr. Cutrer examined the vehicle after Mr. Seals picked it up from NOLA Automotive Repairs and that when Mr. Cutrer removed the spark plug from the vehicle, it "was in bad shape still" and was "still black" on "the bottom." When asked whether this was the spark plug located "on the number eight cylinder[,]" Mr. Wright responded, "Yes, I think so, yes."

Mr. Wright testified that spark plugs are "clean" before they are placed into the engine. Defense counsel questioned Mr. Wright about what might cause a spark plug to "foul out" and thus become black, and the following colloquy occurred:

> Q.  If the [vehicle is] not running properly, [it is] not firing correctly, [it is] going to foul out that plug and make it black. Correct?
>
> A.  Yes.

---

[5] After sustaining an objection by defense counsel, the trial court judge instructed Mr. Seals to ask Mr. Wright "about his personal knowledge" because Mr. Seals had not offered Mr. Wright as an expert witness. Further, the trial court judge explained that "[o]nly experts can provide opinions."

. . . .

> Q.    If . . . an engine is running incorrectly and plugs are put in it, will the engine that is not running correctly cause the plugs to foul out?
>
> A.    [It is] going to blow the plugs. The plugs [are going to] break.
>
> Q.    The plug is going to break if the [engine is] not firing correctly?
>
> A.    No, not the engine. [I am] talking about the plugs [are] going [to] break . . . .

Mr. Wright further testified that the vehicle was in driving condition when Mr. Seals took it from NOLA Automotive Repairs.

***Testimony of Mr. Seals***

In addition to Mr. Wright's testimony, Mr. Seals offered his own testimony during his case in chief; and the trial court allowed Mr. Seals to present his testimony in a narrative. Mr. Seals testified that when he brought his vehicle to NOLA Automotive Repairs, he knew that "the spark plugs [in his type of vehicle] are fragile and sensitive and they have a tendency to break." Thus, as Mr. Seals explained, when he brought his vehicle to NOLA Automotive Repairs, he asked to be informed if there was an additional broken spark plug before NOLA Automotive Repairs installed a new one but that this "[was] not what happened." Instead, as Mr. Seals testified, when he arrived at NOLA Automotive Repairs to retrieve his vehicle, he noticed on his invoice that he had been charged for an additional spark plug repair "without . . . the opportunity to see it and agree to the charges." Mr. Seals alleged that the spark plugs NOLA Automotive Repairs installed were "faulty" and that he had to pay to have them removed and replaced.[6]

---

[6] We note that Mr. Seals did not offer any testimony about the replacement cost(s).

Regarding the condition of his vehicle, Mr. Seals testified that at the time he brought it to NOLA Auto Sports, it had somewhere between 150,000 and 200,000 miles on it. Further, we note that Mr. Seals did not present testimony about any ongoing issues with his vehicle or testimony by a mechanic.

### *Testimony of Mr. Corona*

NOLA Automotive Repairs called, as its only witness, Mr. Corona, who identified himself as the owner of NOLA Automotive Repairs. Mr. Corona testified that it was "not uncommon" for NOLA Automotive Repairs to perform the specific type of spark plug repairs that Mr. Seals requested because "that [type of] vehicle does have a tendency [for] the plugs to seize . . . ."

Regarding the repair to Mr. Seals' vehicle, Mr. Corona stated that Mr. Seals' vehicle was towed to NOLA Automotive Repairs. Additionally, Mr. Corona stated that Mr. Seals "supplied some of the parts" for the repair: he explained that Mr. Seals provided "absolutely new" spark plugs and that NOLA Automotive Repairs would not have put a used spark plug into Mr. Seals' vehicle. Mr. Corona testified that he thought NOLA Automotive Repairs also had to buy some parts but could not recall further details; however, he explained that if these parts were less than $10, then NOLA Automotive Repairs would not have contacted Mr. Seals in advance for his approval. Mr. Corona further testified that NOLA Automotive Repairs did not replace all of the spark plugs but only "a [spark] plug [Mr. Seals could not] get to and a [spark] plug that was broken[,]" the latter of which was in the number eight hole.[7]

---

[7] Mr. Corona clarified that he did not perform the repairs himself but that a "qualified technician" performed the work. Further, Mr. Corona testified that he monitors the work of his employees by "standing[ing] over [his] employees" and "walk[ing his] shop all the time."

Mr. Corona testified that when NOLA Automotive Repairs removed the broken spark plug during the repair, there was "a lot of wet oil behind it[,]" which Mr. Corona explained is "usually [a] sign[] of maybe a cracked piston when . . . the motor has a lot of miles on it." He further stated that while this is a "not uncommon" occurrence, "[there is] no way . . . to know how much oil and how fast [it is] going to take [to] foul out the new [spark] plug." Mr. Corona explained that if a spark plug has "fouled out," then this means it is "full of oil" and black. He testified that "[e]ven a brand new plug is going to be full of oil as soon as the oil makes its way to the backside of the [spark] plug through the cylinder."

As Mr. Corona testified, after the repair, he checked the vehicle before releasing it and test drove it, at which time it was in working order. Mr. Corona also testified that Mr. Seals was able to drive the vehicle away from NOLA Automotive Repairs. He explained that "the fact that the [new] spark plug was firing gave that engine life that it appeared to have until the oil fouled out the new [spark] plug" again. Mr. Corona testified that he did not know how long it took for the oil to foul out the new spark plug but that when it did, this is when Mr. Seals returned to NOLA Automotive Sports "and had problems and issues."[8]

In his closing argument after Mr. Corona's testimony, Mr. Seals agreed with Mr. Corona's testimony about underlying engine issues potentially causing a spark plug to "foul out." Specifically, Mr. Seals stated that he "agree[d] with [Mr. Corona] when he says that service – after the vehicle . . . recalibrates, has a tendency to foul the spark plugs out . . . ." Mr. Seals additionally conceded that "it

---

[8] Mr. Corona stated that it might have taken "a week, a month, or six months to foul out the new [spark] plug."

has been revealed . . . that [this] could possibly be why the spark plugs were black and not because [NOLA Automotive Repairs] failed to replace them."

***AUGUST 31, 2022 ORAL RULING AND SEPTEMBER 16, 2022 SIGNED JUDGMENT***

At the close of the trial, the trial court dismissed Mr. Seals' case with prejudice and provided the following oral reasons:

> Given the testimony that was heard today and in review of the record, [Mr. Seals'] witness testified that the vehicle was towed in and then it was able to be driven out. Additionally, the testimony of [Mr. Seals'] own witness provided that he did, in fact, see black spark plugs prior to bringing the vehicle to NOLA Automotive [Repairs].
>
> I have heard no testimony today that NOLA Automotive Repairs has provided inappropriate or negligent work on this vehicle nor have I been provided any documentation, testimony, or evidence regarding any damages. By [Mr. Seals'] own admission during his closing argument, he has stated that, in fact, if there were black spark plugs at the time that he saw them after the repairs, that it could, in fact, be produced due to the [explanation in the] testimony of [Mr. Corona] in this action.
>
> With that being said, [I am] going to rule in favor of [NOLA Automotive Repairs]. [I am] going to dismiss this case with prejudice, specifically, that [Mr. Seals] has failed to reach his burden in order to prove that damages were, in fact, incurred as a result of the action or inaction of [NOLA Automotive Repairs].

Thereafter, on September 16, 2022, the trial court rendered a written judgment against Mr. Seals and in favor of NOLA Automotive Repairs, stating, in pertinent part:

> IT IS ORDERED, ADJUDGED AND DECREED that Judgment is rendered in favor of Defendant, Joseph Corona d/b/a NOLA Automotive Repairs and the Petition for Damages is dismissed with prejudice.

Mr. Seals timely filed this devolutive appeal.

## STANDARD OF REVIEW

In civil cases, an appellate court employs the manifest error or clearly wrong standard of review, "which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Spencer v. Valero Refining Mereaux, L.L.C.,* 2022-00469, 00539, 00730, p. 8 (La. 1/1/23), ___ So.3d. ___, ___, 2023 WL 533268, at *4 (citing *Hall v. Folger Coffee Co.,* 2003-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98; *Rosell v. ESCO,* 549 So.2d 840, 844 (La. 1989)). "In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and: (1) find that a reasonable factual basis does not exist for the finding; and, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Id.* (citing *Stobart v. State, Through Dep't of Transp. & Dev.,* 617 So.2d 880, 882 (La. 1993)). If "there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Laboriel-Pitio v. Latiker,* 2020-0669, p. 8 (La. App. 4 Cir. 6/16/21), 323 So.3d 929, 935 (alteration in original) (quoting *Brown v. Unknown Driver*, 2005-0421, p. 3 (La. App. 4 Cir. 1/18/06), 925 So.2d 583, 586).

## PRELIMINARY MATTERS

Preliminary, we note:

> Pursuant to Rule 2-12.4 of the Uniform Rules [of the] Courts of Appeal, an appellant's brief must include, among other things, "a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case free from unnecessary repetition, giving accurate

citations of the pages of the record and the authorities cited and a short conclusion stating the precise relief sought."

*De Rome A. Seals v. Thurmond*, 2010-0439, pp. 2-3 (La. App. 4 Cir. 7/14/10), 43 So.3d 322, 324. "Rule 2-12.4 [of the Uniform Rules of the Courts of Appeal] further provides that '[a]ll assignments of error and issues for review must be briefed,' and if they are not briefed, '[t]he court may consider as abandoned any specification or assignment of error which has not been briefed.'" *Id.* at p. 3, 43 So.3d at 324 (alteration in original). Additionally, "for each assignment of error and issue for review, a concise statement of the applicable standard of review" must be provided in the argument. Rule 2-12.4(A)(9)(b), Uniform Rules, Courts of Appeal. The court "may disregard" an argument on an assignment of error if there is no "suitable reference" to the specific page numbers of the record. *Henry v. Henry*, 2017-0282, p. 4 (La. App. 4 Cir. 10/18/17), 316 So.3d 876, 879 (quoting *State v. Rouser*, 2014-0613, p. 18 (La. App. 4 Cir. 1/7/15), 158 So.3d 860, 873 n.13; Rule 2-12.4(A)(4) and (7), Uniform Rules, Courts of Appeal).

In the matter *sub judice,* Mr. Seals' *pro se* brief does not meet the requirements of Rule 2-12.4 of the Uniform Rules of the Courts of Appeal. Specifically, Mr. Seals assigns five issues for review (1) without citing or applying any laws, statutes, or precedents; (2) without reference to specific page numbers of the record; and (3) without providing any concise statements of the applicable standard of review. Further, Mr. Seals' brief contains an argument, but it has no citations to the record or to any laws. However, because Mr. Seals is representing himself, we nonetheless examine the record in light of the applicable law.

## DISCUSSION

Mr. Seals asserts that NOLA Automotive Repairs caused damage to his

11

vehicle when it installed spark plugs which were faulty and replaced a spark plug without his prior consent as he requested. "The plaintiff seeking damages in a civil action must prove each element of his claim by a preponderance of the evidence." *Laboriel-Pitio*, 2020-0669, p. 9, 323 So.3d at 935 (quoting *Bradley v. Safeway Ins. Co. of La.,* 2008-1188, p. 2 (La. App. 4 Cir. 5/6/09), 17 So.3d 1, 2). "Established Louisiana jurisprudence employs a duty-risk analysis to resolve negligence claims under La. C.C. art. 2315." *Id.* (quoting *Chanthasalo v. Deshotel*, 2017-0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107). This duty/risk analysis entails determining if the plaintiff has proved five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

*Duronslet v. Wal-Mart Stores, Inc.,* 2022-0019, p. 17 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136, 1148-49 (citing *Cosey on Behalf of Hilliard,* 2019-0756, 2019-0785, p. 17 (La. App. 4 Cir. 11/12/20), ___ So.3d ___, ___, 2020 WL 6687515, at *8). *See also Jones v. Boot Bar & Grill*, 2022-0154, p. 23 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 984; *James v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 2018-0198, p. 6 (La. App. 4 Cir. 12/26/18), 262 So.3d 958, 963 (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633). "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Perkins v. Entergy Corp.,* 2000-1372, p. 7 (La. 3/23/01), 782 So.2d 606, 611 (citing *Mathieu v. Imperial Toy Corp.*, 1994-0952, p. 11 (La. 11/30/94), 646 So.2d 318, 326).

Turning to the record, we find that that Mr. Seals presented no evidence that the repair service provided by NOLA Automotive Repairs failed to conform to the appropriate standard, or of actual damages to his vehicle. Specifically, Mr. Seals did not present any evidence as to the appropriate standard for a mechanic replacing spark plugs and no evidence that NOLA Automotive Repairs used faulty spark plugs when performing the repair work. Further, Mr. Seals provided no evidence that NOLA Automotive Repairs caused damages to his vehicle.

As previously summarized, at trial, Mr. Seals presented testimony from himself and Mr. Wright. Mr. Wright testified only as to the number eight spark plug. Specifically, he testified that the number eight spark plug was black at the bottom when he saw it at NOLA Auto Sports and contended that this was because it was never replaced by NOLA Automotive Repairs. However, Mr. Seals presented no evidence that Mr. Wright was actually present when NOLA Automotive Repairs serviced his vehicle so as to have witnessed whether NOLA Automotive Repairs replaced the spark plug.

Moreover, Mr. Corona testified that the number eight spark plug was black when he removed and replaced it at NOLA Automotive Repairs. Regarding the black color on the number eight spark plug, Mr. Corona explained that because he saw wet oil behind the removed number eight spark plug, the vehicle's engine could have a cracked piston, thereby causing the spark plug to "foul out." Mr. Corona further stated that a cracked piston is "not uncommon" for engines with high mileage, such as Mr. Seals' vehicle, which Mr. Seals stated had between 150,000 and 200,000 miles when it arrived at NOLA Auto Sports. Further, Mr. Corona testified that underlying engine issues would again cause the new spark plug to "foul out" although he could not say with certainty how long it

would take for a new spark plug to "foul out." Mr. Corona opined that Mr. Seals might have driven the vehicle for "a week, a month, or six months" until the spark plug again "fouled out." Both Mr. Wright and Mr. Corona testified that Mr. Seals was able to drive his vehicle out of NOLA Automotive Repairs. In his Petition, Mr. Seals alleged that he brought his vehicle into NOLA Auto Sports on August 8, 2020, which was approximately two months after NOLA Automotive Repairs replaced the number eight spark plug and thus within the time frame that Mr. Corona estimated that the newly replaced spark plug might foul out. Moreover, in his closing, Mr. Seals agreed that the explanation offered by Mr. Corona "could possibly be why the spark plugs were black and not because [NOLA Automotive Repairs] failed to replace them." Therefore, we find Mr. Seals failed to prove by a preponderance of the evidence that NOLA Automotive Repairs failed to conform to the appropriate standard (the breach of duty element) or caused any damage to his vehicle's engine (the damages element).

Last, Mr. Seals argues in his Petition that NOLA Automotive Repairs additionally charged a non-itemized $26.39 fee for "shop supplies." Louisiana Revised Statute La. R.S. 32:1263, which is entitled "[m]otor vehicle repairs," authorizes a mechanic shop to charge a non-itemized "shop supplies" fee of the lesser of 10% of the total invoice or $50. Specifically, La. R.S. 32:1263 provides in pertinent part:

> Suppliers of mechanical repairs and services for any vehicle subject to regulation pursuant to this Chapter shall provide each consumer with an itemized bill indicating repairs and services performed, parts replaced, materials used, the total labor charge, and the identity of the mechanic, repairman, or supplier who performed the work. Nothing in this Section shall prohibit a supplier of mechanical repairs and services from charging a service fee for the use of shop supplies such as rags, fender covers, small amounts of fluid, or other items which are not itemized, provided that the fee does not exceed ten percent of

14

the total invoice for mechanical repairs or fifty dollars, whichever is less.

However, the record reflects that Mr. Seals presented no testimony as to the total invoice from NOLA Automotive Repairs nor does the record reflect that Mr. Seals offered the invoice into evidence. Again, we conclude Mr. Seals failed to prove his claim by a preponderance of the evidence.

## DECREE

For the foregoing reasons, we affirm the trial court's September 16, 2022 judgment, which dismissed Mr. Seals' claims against NOLA Automotive Repairs with prejudice.

**AFFIRMED**