STATE OF LOUISIANA      *      NO. 2023-KA-0022

VERSUS      *

DAMOND SCOTT      *      COURT OF APPEAL

     FOURTH CIRCUIT

     * 

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 537-253, SECTION "O"
Honorable Camille Buras, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Nakisha Ervin-Knott)

Jason R. Williams
District Attorney
Brad Scott
Assistant District Attorney
Chief of Appeals
Thomas Frederick
Assistant District Attorney
ORLEANS PARISH
619 South White Street
New Orleans, Louisiana 70119

     COUNSEL FOR STATE OF LOUISIANA

Kevin V. Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, Louisiana 70002

     COUNSEL FOR DEFENDANT/APPELLANT

**CONVICTIONS FOR SECOND DEGREE MURDER AND ATTEMPTED SECOND DEGREE MURDER AFFIRMED; CONVICTION FOR OBSTRUCTION OF JUSTICE VACATED; SENTENCE FOR SECOND DEGREE MURDER AFFIRMED AS AMENDED; SENTENCE FOR ATTEMPTED SECOND DEGREE MURDER AFFIRMED.**

**AUGUST 30, 2023**

NEK

SCJ

PAB

The defendant, Damond Scott (hereafter "Defendant"), seeks review of his convictions and sentences for second degree murder, attempted second degree murder, and obstruction of justice. For the reasons that follow, we affirm the Defendant's convictions for second degree murder and attempted second degree murder; vacate Defendant's conviction and sentence for obstruction of justice; affirm Defendant's sentence for attempted second degree murder; and affirm as amended Defendant's sentence for second degree murder to reflect parole eligibility in line with La. R.S. 15:574.4(F).

## STATEMENT OF THE FACTS

On the afternoon of January 17, 2017, a vehicle driven by Tommie Mahoney (hereafter "Mr. Mahoney") with David Wimberly (hereafter "Mr. Wimberly") in the passenger seat was travelling down the 1600 and 1700 blocks of Mandeville Street, near the intersection with North Derbigney Street. As Mr. Mahoney travelled down Mandeville Street, Defendant began firing shots at the vehicle. This incident resulted

in the untimely death of Mr. Wimberly, the attempted murder of Mr. Mahoney, and injury to a bystander.

Sergeant Nicholas Williams (hereafter "Sgt. Williams"), the lead homicide detective in this case, responded to the scene of the shooting. NOPD was able to obtain video surveillance from cameras located in the area. Video surveillance depicted a white Chevrolet Camero traveling in the 1600 block of Mandeville Street. The Camero parked, and the driver handed an assault rifle to Defendant and another firearm to Defendant's associate. The investigation revealed that the Camero belonged to Defendant's mother, Linette Richardson (hereafter "Ms. Richardson"), although she was not the driver of the Camero during this incident. Defendant concealed the assault rifle under his jacket, crossed the street, and entered an alley of one of the houses in the 1600 block of Mandeville Street.

Minutes later, a black SUV[1], driven by Mr. Mahoney with Mr. Wimberly in the passenger seat, travelled down the 1600 block of Mandeville Street, and the Defendant emerged from the alley firing his weapon at the SUV. Defendant continued shooting at the SUV as the vehicle travelled through the 1700 block of Mandeville Street until Mr. Mahoney lost control of the SUV. The SUV hit a parked car in the 1700 block of Mandeville Street, pinning a bystander to the ground. When the shooting ceased, Defendant fled the area on foot. Police officers recovered an assault rifle from the SUV; however, they never recovered the assault rifle Defendant used during the shooting.

_____

[1] The black SUV, a Hyundai Sante Fe, driven by Mr. Mahoney was in fact a stolen vehicle at the time of the shooting.

2

During the course of the investigation, Mr. Mahoney provided the nicknames of the individuals who shot at him and Mr. Wimberly in the SUV. Although Mr. Mahoney did not identify the Defendant by his name "Damond Scott", he identified Defendant by his nickname "D-Man" as one of the shooters. Additionally, Germaine Hood (hereafter "Ms. Hood"), an eyewitness to the shooting incident, observed Defendant having an assault rifle delivered to him and identified Defendant as a shooter of the SUV. At the time of the shooting, pursuant to Defendant's bond in an unrelated case[2], there was a court order prohibiting Defendant from being in the City of New Orleans unless he was accompanied by his mother for drug tests, doctors' appointments, and court dates.

Subsequent to the January 17, 2017 shooting incident, on March 15, 2017, Defendant was arrested for illegal possession of a firearm and resisting arrest. The NOPD body-worn camera system provided footage of Defendant's March 15, 2017 arrest and showed his face. Detective Ryan Aucoin (hereafter "Det. Aucoin"), who assumed the lead investigator role in the shooting incident after Sgt. Williams took a leave of absence from the police department, compared the March 15, 2017 arrest footage to the video surveillance from the January 17, 2017 shooting and was able to positively identify Defendant as the shooter. Based on the identification from the surveillance video, body-worn camera, and the witness identification, Det. Aucoin determined probable cause existed for Defendant's arrest. On June 6, 2017, Defendant was arrested in New Orleans, Louisiana, while he was already in jail on

---

[2] The case was ultimately dismissed in July 2020 by the previous District Attorney's administration.

the March 15, 2017 arrest. At the time of the January 17, 2017 shooting incident, Defendant was seventeen years old.

## PROCEDURAL HISTORY

On September 14, 2017, Defendant was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1; attempted second degree murder, a violation of La. R.S. 14:30.1; and obstruction of justice, a violation of La. R.S. 14:130.1.[3] On September 29, 2017, Defendant pled not guilty to all charges.

A four-day trial commenced with jury selection on August 1, 2022, and concluded on August 4, 2022, with the jury finding Defendant guilty of second degree murder, attempted second degree murder, and obstruction of justice. On October 18, 2022, prior to sentencing, Defendant filed a motion for new trial, which was denied. On the same day, the trial court sentenced Defendant to life without the benefit of probation, parole, or suspension on the second degree murder conviction; fifty years without the benefit of probation, parole, or suspension on the attempted second degree murder conviction; and forty years on the obstruction of justice conviction, with the sentences to run concurrently. After sentencing, on October 18, 2022, Defendant filed a motion to reconsider sentence that was denied by the trial court. This appeal followed.

---

[3] Elijah Ben, an original co-defendant in this mater, was charged with the same offenses as Defendant. However, Elijah Ben pled guilty to reduced charges pursuant to a plea agreement and has no part in this appeal.

**ERRORS PATENT**

In accordance with La. C.Cr.P. art. 920(2), all appeals are reviewed for errors patent on the face of the record.[4] A review of the record reveals two errors patent, one of which is also raised as assignment of error number three.

First, the record evidences that the trial court sentenced Defendant less than twenty-four hours after denying his motion for new trial. Thus, the trial court erred in failing to observe the twenty-four hour delay required by La.C.Cr.P. art. 873. La. C.Cr.P. art. 873 states that if "a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled," unless the defendant "expressly waives" the delay or pleads guilty. Nevertheless, if a defendant waives the twenty-four hour sentencing delay, then the district court's failure to wait at least twenty-four hours after a motion for new trial constitutes harmless error. *State v. Robinson*, 21-0254, p. 21 (La. App. 4 Cir. 2/18/22), 336 So.3d 567, 580, *writ denied*, 22-00437 (La. 5/24/22), 338 So.3d 1185, *reconsideration not considered*, 22-00437 (La. 9/7/22), 345 So.3d 430.

Defendant was convicted by jury on August 4, 2022. On October 18, 2022, Defendant filed a motion for new trial, which the trial court denied at a hearing that same day. Following the denial of the motion for new trial, the trial court asked whether Defendant was invoking his right to a sentencing delay, to which Defendant responded that he was waiving the delay. The trial court proceeded to sentence Defendant. When the district court sentenced Defendant on the same day as the denial of the motion for new trial, the district court failed to comply with the twenty-

---

[4] La. C.Cr.P. art. 920(2) provides that an error patent is "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." *State v. Duckett*, 2019-0319, p. 8 (La. App. 4 Cir. 12/18/19), 288 So. 3d 167, 174 n.3.

four hour sentencing delay found in La. C.Cr.P. art. 873. However, Defendant waived the twenty-four hour sentencing delay when he expressly waived the delay in open court following the denial of his motion for a new trial. Accordingly, although the trial court erred in failing to observe the twenty-four hour delay required by La.C.Cr.P. art. 873, we conclude the error was harmless.

Second, the trial court's sentence imposed for Defendant's second degree murder conviction failed to comply with La. R.S. 15:574.4(F). La. R.S. 15:574.4(F) states, in pertinent part, "…any person serving a sentence of life imprisonment for a conviction of second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense is on or after August 1, 2017, shall be eligible for parole consideration if all of the following conditions have been met…."

At the time of this shooting incident, Defendant was seventeen years old. Additionally, he was indicted after August 1, 2017, convicted of second degree murder, and sentenced to life without parole. In this case, the trial court erred in imposing a sentence of life imprisonment without benefit of parole because this case clearly falls within the scope of La. R.S. 15:574.4(F), which mandates that juveniles convicted of second degree murder after August 1, 2017, be eligible for parole consideration. Accordingly, as discussed *infra* in conjunction with Defendant's third assignment of error, we amend Defendant's sentence for second degree murder to reflect parole eligibility in line with La. R.S. 15:574.4(F).

### DISCUSSION

On appeal, Defendant assigns nine errors for this Court's review: (1) the guilty verdicts of second degree murder and attempted second degree murder are contrary to the law and evidence; (2) the district court erred in denying the motion for new

6

trial; (3) the imposition of life imprisonment and fifty years sentences without the benefit of parole, probation, or suspension of sentence was unconstitutionally excessive and unduly harsh as Defendant was age seventeen; (4) the district court erred in denying the motion to reconsider sentence; (5) the guilty verdict of obstruction of justice is contrary to the law and the evidence; (6) the defendant was convicted before an improperly constituted jury in violation of due process of law; (7) the defendant was denied his constitutional right to testify; (8) the district court erred in admitting Scott's prior criminal prosecution in response to an opening statement at trial; and (9) the imposition of the maximum forty-year sentence for obstruction of justice is unconstitutionally excessive and unduly harsh. We discuss Defendant's assignments of error out of order due to the sufficiency of evidence arguments being asserted. Further, we do not discuss Defendant's ninth assignment of error, as our opinion vacating Defendant's conviction for obstruction of justice renders the ninth assignment of error moot.

***Assignments of Error Numbers One, Two, and Five***

**Sufficiency of the Evidence**

In his assignment of error number one, Defendant contends that the guilty verdicts of second degree murder and attempted second degree murder are contrary to the law and evidence. In assignment of error number two, Defendant asserts that the trial court improperly denied his motion for new trial based on the same insufficient evidence arguments. Similar to his assignment of error number one, in assignment of error number five, Defendant contends that the guilty verdict of obstruction of justice is contrary to the law and evidence. We first determine whether sufficient evidence exists to support the convictions of second degree murder, attempted second degree murder and obstruction of justice. *State v. Hearold*, 603

7

So. 2d 731, 734 (La. 1992) ("When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal. . . .").

Pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So. 2d 649, 657 (citations omitted). The statutory test of La. R.S. 15:438[5] "works with the *Jackson* constitutional sufficiency test to evaluate whether all the evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Id*. (citing *State v. Rosiere*, 488 So. 2d 965, 968 (La. 1986)).

This Court has previously set forth the applicable standard of review for sufficiency of the evidence:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So. 2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due

---

[5] La. R.S. 15:438 states, "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

8

process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So. 2d 1319 (La. 1992) at 1324.

*State v. Huckabay*, 2000-1082, p. 32 (La. App. 4 Cir. 2/6/02), 809 So. 2d 1093, 1111.

### Second degree Murder and Attempted Second Degree Murder

The State charged Defendant with the second degree murder of Mr. Wimberly and attempted second degree murder of Mr. Mahoney, and the jury found him guilty as charged. La. R.S. 14:30.1(A)(1) defines second degree murder as the "killing of a human being…when the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:10(1) defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act." "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Bishop,* 2001-2548, p. 4 (La. 1/14/03), 835 So. 2d 434, 437; La. R.S. 14:10(1); *State v. Butler*, 322 So. 2d 189 (La.1975); *State v. Martin*, 92-0811 (La.App. 5 Cir. 5/31/94), 638 So. 2d 411.

"To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death." *Bishop*, 2001-2548, p. 4 (La. 1/14/03), 835 So. 2d at 437 (citing La. R.S. 14:30.1; La. R.S. 14:27). "Although the statute for the completed crime of second degree murder allows for a conviction based on 'specific intent to kill or to inflict great bodily harm,' La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill." *Id.* (citing

9

*State v. Huizar,* 414 So. 2d 741 (La.1982)). Defendant argues that there is insufficient evidence for his convictions of second degree murder and attempted second degree murder because the State failed to prove that the shooting was not the result of self-defense. Defendant argues that he acted in self-defense when he shot Mr. Wimberly and Mr. Mahoney; thus, his actions were legally justified.

A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). "In a homicide case in which the defendant asserts he acted in self-defense, the State has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense." *State v. Kirk*, 2011-1218, pp. 6-7 (La. App. 4 Cir. 8/8/12), 98 So. 3d 934, 939-40 (citing *State v. Taylor*, 2003-1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63).

"This court has consistently declined to settle definitively the issue of which party bears the burden of persuasion in proving self-defense in a non-homicide case." *State v. Abbott,* 2017-0016, p. 18 (La. App. 4 Cir. 6/14/17), 222 So. 3d 847, 857 (citing *State v. De Gruy,* 2016-0891, pp. 18-19 (La. App. 4 Cir. 4/5/17), 215 So. 3d 723, 733). While some cases suggest that the defendant must prove by a preponderance of the evidence that he acted in self-defense, others indicate the State has to establish beyond a reasonable doubt that the defendant did not act in self-

defense.[6] We need not resolve this issue here because we find that under either standard, the evidence is sufficient to support a finding that the defendant did not act in self-defense. *State v. Rouser,* 2014-0613, p. 7 (La. App. 4 Cir. 1/7/15), 158 So. 3d 860, 867; *See also State v. Taylor,* 1997-2261 (La. App. 1 Cir. 9/25/98), 721 So. 2d 929, 931.

In a non-homicide matter, a justification defense mandates a two-step review, specifically: (1) a subjective inquiry into whether the force was apparently necessary; and (2) an objective inquiry into whether the force used was reasonable under the circumstances. *State v. Canales*, 2014-0663, p.12 (La. App. 4 Cir. 12/10/14), 156 So. 3d 1183, 1191, *writ denied*, 2015-0048 (La. 11/6/15), 180 So. 3d 306 (quoting *State v. Cooks*, 2011-0342, p. 11 (La. App. 4 Cir. 12/14/11), 81 So. 3d 932, 939, *writ denied*, 2012-0112 (La. 5/18/12), 89 So.3d 1189). Furthermore, "[t]he trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may

_____

[6] This Court recognized the conflicting jurisprudence in *State v. Rouser*, 2014-0613, pp. 6-7 (La. App. 4 Cir. 1/7/15), 158 So. 3d 860, 866-67; a case with one homicide victim and two non-homicide victims, stating:

> It is well-settled that in a homicide case where the defendant asserts that he acted in self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Byrd*, 12-556, p. 3 (La. App. 4 Cir. 6/5/13), 119 So .3d 801, 804, *writ denied*, 13-1589 (La. 1/27/14), 130 So. 3d 957. However, it is unsettled whether the burden of proof as to a claim of self-defense in a non-homicide situation is: (1) upon the defendant to establish by a preponderance of the evidence that he acted in self-defense; or (2) upon the State to establish beyond a reasonable doubt that the defendant did not act in self-defense. *See State v. Fluker*, 618 So. 2d 459, 463 (La. App. 4th Cir.1993) (the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense); *State v. Wischer*, 04-325, pp. 8-9 (La. App. 4 Cir. 9/22/04), 885 So. 2d 602, 606-09 (the defendant has the burden of proving the affirmative defense of justification, i.e., self-defense, by a preponderance of the evidence).

11

impinge upon the fact finder's discretion 'only to the extent necessary to guarantee the fundamental protection of due process of law.'" *State v. Tate*, 2001-1658, p. 6 (La. 5/20/03), 851 So. 2d 921, 929 (quoting *State v. Mussall*, 523 So. 2d 1305, 1310 (La.1988)).

Turning to the facts of this case, Sgt. Williams and Det. Aucoin testified at trial that based on their investigation, which included the examination of the video surveillance and still frame photographs, Defendant was one of the shooters on January 17, 2017. Prior to his leave of absence from NOPD, Sgt. Williams located the white Camero that was used to provide Defendant with an assault rifle, and he identified the Camero as belonging to Defendant's mother, Ms. Richardson. As Sgt. Williams walked the jury through the video surveillance of the incident, the video showed that Defendant was the initial aggressor as he initiated gunfire at the SUV.

Defendant maintains his argument of self-defense by utilizing Ms. Hood's testimony to insinuate that Mr. Wimberly and Mr. Mahoney were attempting a drive-by shooting at the time of the incident and that he needed to protect himself. Ms. Hood's testimony revealed that she saw Mr. Wimberly and Mr. Mahoney circle the block multiple times in the black SUV prior to the shooting and noted that she saw a TEC-9 weapon, a different weapon from the assault rifle recovered from the SUV, inside the SUV prior to the shooting. Ms. Hood's testimony also revealed that Mr. Wimberly and Mr. Mahoney were "hunting" prior to the shooting. Defendant asserts that based on Mr. Wimberly and Mr. Mahoney's actions leading up to the shooting,

12

it is more than apparent that the State failed to prove beyond a reasonable doubt that Defendant was not acting in self-defense.

However, both Sgt. Williams and Det. Aucoin testified that the idea of Mr. Wimberly and Mr. Mahoney possibly attempting to commit a drive-by at the time of the shooting was unreasonable. Sgt. Williams and Det. Aucoin testified that at the time of the shooting, the windows of the SUV were rolled up.  Sgt. Williams stated that in the course of doing his job, he has never seen a drive-by shooting where the perpetrator left his or her windows up. He also stated that a shooter would not want to commit a drive-by shooting with the windows up because of the possibility of getting struck by shards of glass popping back in his or her direction.  Additionally, shooting through glass decreases the shooter's chances of hitting the intended target because the bullets will be thrown off by the glass.

Det. Aucoin testified that in course of his investigation, he did not find anything in the video surveillance that showed that Mr. Wimberly and Mr. Mahoney were attempting to commit a drive-by shooting or any other crime.  Moreover, Det. Aucoin testified that based on the angle of the video surveillance, there were no shots fired from the SUV to the outside of the vehicle; rather, the only shots fired were from the outside of the vehicle into the SUV. Kenneth Leary (hereafter "Mr. Leary"), a firearms examiner for the NOPD and a ballistics expert, testified that it would not make any rational sense for someone to shoot an assault rifle, such as the one recovered from the SUV, out of a closed vehicle window.  He further testified that in his decades of experience, he did not recall ever being involved with a case, as an

expert nor as a police officer, in which someone attempted to shoot out of a vehicle with the windows rolled up.

After a review of the evidence before this Court, we find that the jury made reasonable credibility determinations in favor of the State and rationally rejected Defendant's assertion of self-defense. The record reveals sufficient evidence to conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt all the elements of second degree murder and attempted second degree murder. Accordingly, we conclude that this assignment of error, regarding the second degree murder and attempted second degree murder convictions, is without merit.

## Motion for New Trial

Defendant contends that the guilty verdicts of second degree murder and attempted second degree murder are contrary to the law and evidence and that the district court therefore erred in denying his motion for new trial. Because the evidence was sufficient to prove beyond a reasonable doubt that Defendant committed second degree murder and attempted second degree murder, we find that the district court did not err in denying Defendant's motion for new trial as it relates to his convictions for second degree murder and attempted second degree murder.

## Obstruction of Justice

Defendant argues that insufficient evidence exists to convict him of obstruction of justice because the State cannot definitively prove that he removed the firearm from the crime scene. La. R.S. 14:130.1(A)(1)(a) pertinently defines obstruction of justice:

14

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or U.S. law enforcement officers.

"Specific intent" is the state of mind that exists when circumstances indicate the offender actively desired prescribed criminal consequences to follow his act. La. R.S. 14:10(1). "Specific intent [to commit obstruction of justice] need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant." *State v. Harvey*, 2021-0730, p. 10 (La. App. 4 Cir. 5/25/22), 345 So. 3d 1043, 1050, *writ denied*, 2022-00953 (La. 9/20/22), 346 So. 3d 803 (citing *State v. Everett*, 2011-0714, p. 14 (La. App. 4 Cir. 6/13/22), 96 So. 3d 605, 619).

Under La. R.S. 14:130.1(A)(1), obstruction of justice is a specific intent crime. To support a conviction, the State must prove more than the mere removal of evidence from a crime scene; the State must also prove that such removal was done with "the specific intent of distorting the results of any criminal investigation or proceeding that may reasonably prove relevant to a criminal investigation or proceeding." La. R.S. 14:130.1(A)(1).

Defendant asserts that his conviction for obstruction of justice is purely circumstantial and does not exclude every reasonable hypothesis of innocence. La. R.S. 15:438 provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude

15

every reasonable hypothesis of innocence." In *State v. Dorsey*, 2020-0029, p. 17 (La. App. 4 Cir. 12/9/20), 312 So. 3d 652, 663, *writ denied,* 2021-00055 (La. 4/20/21), 313 So. 3d 1255, this Court stated:

> When reviewing the sufficiency of the evidence of a conviction based on circumstantial evidence, the appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the reviewing court must determine whether the "alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson.*

In the case *sub judice*, the State maintains that the evidence was sufficient to convict Defendant of obstruction of justice because there was ample evidence for the jury to conclude that he fled the scene with the assault rifle he used to shoot Mr. Wimberly and Mr. Mahoney. Video surveillance shows him fleeing the scene, yet there is no footage of Defendant leaving the rifle at the scene. Sgt. Williams testified that the NOPD crime lab conducted a search of the crime scene, and Defendant's rifle was never recovered. Based on these circumstances, the State argues that a rational juror could infer that Defendant took his rifle with him when he left the crime scene.

However, assuming the State established that Defendant fled the crime scene with his assault rifle, this evidence is not sufficient to prove beyond a reasonable doubt that he possessed the specific intent to distort the police investigation. The hypothesis that Defendant had the specific intent to distort the results of the police investigation when he left the crime scene is contradicted by the fact that he left behind shell casings (instead of collecting the shell casings ejected from his rifle), video surveillance (instead of destroying the video surveillance that documented his presence in the neighborhood shooting at the SUV), and witnesses (instead of

16

harming the witnesses that were outside on the street at the time of the shooting incident). From this evidence, a rational juror could have inferred that, in taking the firearm with him, Defendant gave no thought to interfering with the results of a criminal investigation or proceeding. Accordingly, the evidence is insufficient to support Defendant's conviction for obstruction of justice, and we vacate Defendant's conviction for obstruction of justice.

***Assignments of Error Numbers Three, Four, and Nine***

**<u>Excessive Sentence</u>**

In his assignments of error numbers three, four, and nine, Defendant maintains that the imposition of life imprisonment and fifty years sentences without the benefit of parole, probation or suspension of sentence for second degree murder and attempted second degree murder and that the imposition of the maximum forty year sentence for obstruction of justice are unconstitutionally excessive and unduly harsh, respectively. Defendant argues that the evidence does not support the imposition of the sentences. As such, he argues that the trial court erred in denying his motion to reconsider sentence. This Court, having vacated Defendant's obstruction of justice conviction, renders assignment of error number nine moot. However, this Court will review Defendant's assigned error of excessive sentences as it relates to his convictions for second degree murder and attempted second degree murder.

Under the Eighth Amendment of the United States Constitution and Article I, §20 of the Louisiana Constitution, the imposition of excessive and cruel punishments are prohibited. *State v. Wilson*, 2014-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So. 3d 1150, 1165. "The excessiveness of a sentence is a question of law, and a reviewing court will not set aside a sentence [for excessiveness] absent a manifest abuse of discretion by the trial [judge]." *State v. Alridge,* 2017-0231, p. 39 (La. App.

17

4 Cir. 5/23/18), 249 So. 3d 260, 288, *writ denied,* 2018-1046 (La. 1/8/19), 259 So. 3d 1021. "The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *State v. Bradley*, 2018-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So. 3d 94, 99-100 (quoting *State v. Williams*, 2015-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So. 3d 242, 250); *see also* La. C.Cr.P. art. 881.4(D). Although a sentence is within the applicable statutory range, a sentence may be deemed unconstitutionally excessive if the reviewing court determines that the sentence does not serve to complete the acceptable goals of punishment, constitutes purposeful imposition of pain and suffering, and is disproportionate to the severity of the offense committed. *See State v. Kennon*, 2019-00998, p. 10 (La. 9/1/20), 340 So. 3d 881, 888 (citing *State v. Dorthey*, 623 So.2d 1276 (La.1993); *State v. Johnson*, 709 So.2d 672 (La. 1998)). Therefore, "[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Mathieu*, 2018-964, p. 4 (La. App. 3 Cir. 11/6/19), 283 So. 3d 1041, 1045 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957). We will review this matter to determine whether the sentences imposed are grossly disproportionate to the severity of the crime committed and whether the trial court abused its vast discretion in imposing Defendant's sentences.

When reviewing a claim that a sentence is excessive, our Court must determine whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1 and whether the facts of the case warrant the sentence imposed. *State v. Rouser*, 2014-0613, p. 18 (La. App. 4 Cir. 1/7/15), 158 So. 3d 860, 872 (citation omitted). "If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in

light of the particular defendant and the circumstances of the case. . . ." *Id.*, 2014-0613, p. 18, 158 So. 3d at 872-73.

An examination of the record reflects that the trial court complied with the sentencing guidelines in La. C.Cr.P. art. 894.1 regarding Defendant's sentencing for second degree murder and attempted second degree murder. Both the State and Defendant were afforded the opportunity to be heard regarding his sentences, yet neither party offered any evidence nor witness testimony. Additionally, the trial court took into account mitigating and aggravating circumstances into sentencing. While the trial court noted Defendant's age at the time of the shooting, the trial court also noted that he was in violation of a bond for a second class felony as he was not supposed to be in Orleans Parish but for limited purposes and only when accompanied by his mother. Moreover, the trial court noted the many pretrial conferences and instances throughout the course of trial in which Defendant consistently refused a plea deal to manslaughter.

As it relates to his sentence for the second degree murder conviction, Defendant argues that the trial court erred in imposing his life sentence without the benefit of parole because he was seventeen years old when the shooting incident occurred, and he was indicted on September 14, 2017. For offenders convicted of second degree murder in Louisiana, La. R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. In *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L.Ed. 2d 407 (2012), the United States Supreme Court held that a State's sentencing scheme that mandates life imprisonment without parole for offenders under the age of eighteen at the time they committed a homicide offense violates the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Crosby*, 54,539 (La. App.

19

2 Cir. 6/29/22), 342 So. 3d 458, 464, *writ not considered*, 2022-01645 (La. 1/11/23), 352 So. 3d 566. In 2013, in response to *Miller v. Alabama*, the Louisiana Legislature enacted La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4, providing procedures for determining parole eligibility for juvenile offenders.

> La. R.S. 15:574.4(F) provides, in pertinent part:

> Notwithstanding any provision of law to the contrary and except as provided in Subsection G of this Section, any person serving a sentence of life imprisonment for a conviction of second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense is on or after August 1, 2017, shall be eligible for parole consideration if [certain] conditions have been met. . .

La. R.S.15:574.4(F) provides for automatic parole eligibility for juvenile offenders indicted for second degree murder on or after August 1, 2017. We find that the trial court erred in imposing Defendant's sentence of life imprisonment without benefit of parole for second degree murder because this case clearly falls within the scope of La. R.S. 15:574.4(F), which *mandates* that juveniles convicted of second degree murder after August 1, 2017, be eligible for parole consideration upon meeting the criteria enumerated in the statute. Defendant was seventeen years old when he committed the offense of second degree murder, and he was indicted for the crime after August 1, 2017. Accordingly, Defendant is automatically eligible for parole consideration pursuant to the terms of La. R.S. 15:574.4(F).

"An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." La. C.Cr.P. art. 882; *see also State v. Crosby*, 54,539 (La. App. 2 Cir. 6/29/22), 342 So. 3d 458, 465 (declining to vacate and remand for resentencing and instead amending sentence to life imprisonment with the benefit of parole where juvenile was illegally sentenced to life imprisonment without benefit of parole after pleading guilty to second degree

20

murder). Defendant's sentence of life imprisonment without benefit of parole is an illegal sentence as it is in clear violation of the requirements La. R.S. 15:574.4(F) and Defendant's Eighth Amendment right against cruel and unusual punishment as provided in *Miller*. Therefore, this Court does not vacate Defendant's sentence and remand for resentencing; rather, we amend Defendant's sentence for second degree murder to reflect parole eligibility in line with La. R.S. 15:574.4(F).

As it relates to the attempted second degree murder conviction, the trial court considered the seriousness of the offense and the danger Defendant posed to the public. The trial court further noted the fact that an innocent bystander was injured when the SUV crashed as a result of the shooting. Despite considering Defendant's age, the trial court determined that the video surveillance showing this indiscriminate shooting at the SUV warranted the maximum sentence for the attempted second degree murder conviction. We find adequate evidence that the trial court complied with the statutory guidelines in La. C.Cr.P. art. 894.1 and find that the trial court did not abuse its discretion in sentencing Defendant to fifty years without the benefit of parole, probation or suspension of sentence for the attempted second degree murder conviction.

*Assignment of Error Number Six*

**Improper Jury Venire**

In his assignment of error number six, Defendant argues that he was convicted before an improperly constituted jury in violation of La. C.Cr.P. art. 401(A)(5), which provides:

> In order to qualify to serve as a juror, a person shall meet all of the following requirements:

21

5. Not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

Defendant relies on *State v. Preston*, 2023-0039 (La. App. 4 Cir. 1/19/23) (unpublished decision) for his contention that the Orleans Parish Jury Commissioner failed to update jury qualifications on jury summons once La. C.Cr.P. art. 401(A)(5) was amended to allow prospective jurors with felony convictions older than five years. However, *Preston* is procedurally distinguishable from the case *sub judice*. In *Preston*, the defendant timely filed a motion to quash the jury venire, which the Defendant failed to do in this matter. At no point during trial was an objection lodged about the improper jury venire composition. Therefore, Defendant is barred from raising the issue for the first time on appeal. *See* La. C.Cr.P. art. 841(A); *see also State v. Armentor*, 2019-1267, p. 12 (La. App. 1 Cir. 7/31/20), 309 So. 3d 762, 771-72, *writ denied*, 2020-01032 (La. 2/17/21), 310 So.3d 1149 (citation omitted) ("[T]he defendant did not file such a pretrial motion to quash and did not raise the issue before *voir dire* began...Consequently, the defendant's claim of a defective jury venire is not properly before this court. . . ."). Accordingly, this assignment of error lacks merit.

### *Assignment of Error Number Seven*

### <u>Right to Testify</u>

In his assignment of error number seven, Defendant asserts that he was denied his constitutional right to testify. But, pursuant to the applicable jurisprudence, we find that the Defendant fails to establish that his right to testify was violated.

In *State v. Hampton*, 2000-0522 (La. 3/22/02), 818 So. 2d 720, on reh'g in part (June 7, 2002), the Louisiana Supreme Court adopted two criteria for determining

whether a defendant's right to testify was violated or waived by his silence at trial, stating as follows:

(1) absent extraordinary circumstances that should alert the trial court to conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right;

(2) the court must consider whether the petitioner has waived his right to testify ... [The defendant can only] rebut that presumption ... by showing that his attorney caused him to forego his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel 'told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ... '[(b) by demonstrating from the record] that those 'specific factual allegations would be credible...'

*Hampton*, 00-0522, p. 14, 818 So. 2d at 729-30 (quoting *Passos-Paternina v. United States*, 12 F.Supp.2d 231, 239-40 (D.P.R. 1998)).

In the case *sub judice*, Defendant's argument relies entirely on his counsel's statement during the motion for new trial that counsel refused to allow Defendant to testify although he expressed a desire to testify. However, Defendant fails to allege or show any extraordinary circumstances that should have alerted the trial court to a conflict between himself and his trial counsel that would have prompted the trial court to inquire into Defendant's right to testify. In ruling on the motion for new trial, the trial judge stated that many recesses were allowed for Defendant to confer with defense counsel, and that there was no indication of a contentious disagreement or anything that showed to the Court that it should develop a further inquiry. Moreover, on appeal, Defendant fails to rebut the presumption that he waived his right to testify by alleging any specific facts from the record demonstrating that his trial counsel prohibited him from testifying nor has he presented an affidavit from trial counsel demonstrating that counsel informed Defendant that he was legally

forbidden to testify or in some similar way compelled him to remain silent. Thus, Defendant has failed to support his claim that his right to testify was violated.

***Assignment of Error Number Eight***

## <u>Other Crimes Evidence</u>

In his assignment of error number eight, Defendant asserts that the trial court erred in the admission of his prior criminal prosecution in response to an opening statement at trial. A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. *State v. Taylor*, 2016-1124, p. 18 (La. 12/1/16), 217 So. 3d 283, 296. The introduction of other crimes evidence is governed by La. C.E. art. 404(B)(1), which provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The Louisiana Supreme Court cautioned in *Taylor* "even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence must have substantial relevance independent from showing defendant's general criminal character and thus is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense." *Taylor*, 2016-1124, p. 12, 217 So. 3d at 292. In offering grounds for the admissibility of other crimes evidence, "the state cannot simply rely on a boilerplate recitation" from La. C.E. art. 404(B)(1). *Id*.

24

In ruling on the admissibility of the other crimes evidence, the district court must determine the independent relevancy of that evidence to the charges against the defendant. "The district court must also balance the probative value of the other crimes, wrongs, or acts evidence against its prejudicial effects before the evidence can be admitted." *Taylor*, 16-1124, p. 12, 217 So.3d at 292 (citing *State v. Henderson*, 12-2422 (La. 1/4/13), 107 So.3d 566, 567-68).

During opening statement, defense counsel told the jury that Defendant did not seek to kill or harm Mr. Wimberly and Mr. Mahoney; rather, Mr. Wimberly and Mr. Mahoney were searching for the Defendant as "prey," and Defendant "was legally allowed to be exactly where he was" when the shooting occurred. Through the testimony of Ms. Richardson, the trial court allowed the State to introduce evidence of a court order, from July 22, 2016, that was in place at the time of the shooting, which prohibited Defendant's presence in Orleans Parish without the supervision of his mother.

The State presented the court order to the jury in order to refute defense counsel's opening statement, specifically the statement that Defendant "was legally allowed to be exactly where he was" when the shooting occurred. Furthermore, even in the absence of the defense's assertion in its opening statement, the fact of the order was independently admissible to rebut the claim of self-defense. Based on the record, we find no abuse of the trial court's discretion in allowing evidence of the prior court order before the jury. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the Defendant's convictions for second degree murder and attempted second degree murder; vacate Defendant's conviction and sentence for obstruction of justice; affirm Defendant's sentence for attempted second degree murder; and affirm as amended Defendant's sentence for second degree murder to reflect parole eligibility in line with La. R.S. 15:574.4(F).

**CONVICTIONS FOR SECOND DEGREE MURDER AND ATTEMPTED SECOND DEGREE MURDER AFFIRMED; CONVICTION FOR OBSTRUCTION OF JUSTICE VACATED; SENTENCE FOR SECOND DEGREE MURDER AFFIRMED AS AMENDED; SENTENCE FOR ATTEMPTED SECOND DEGREE MURDER AFFIRMED.**